**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SIDNEY MCLENDON, individually	PLAINTIFFS
and on behalf of others similarly situated

v.	No. 4:15CV00752 JLH

SCHLUMBERGER TECHNOLOGY
CORPORATION	DEFENDANT

**OPINION AND ORDER**

Sidney McLendon brings this action against his former employer, Schlumberger Technology Corporation, alleging that Schlumberger failed to pay McLendon and other similarly situated employees for overtime in violation of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 216(b). McLendon has filed a motion for conditional class certification and court-authorized notice. For the following reasons, the motion is denied.

**I.**

Schlumberger provides products and services to the oil and gas industry. Its corporate headquarters are in Sugar Land, Texas, but it operates in locations through the United States. McLendon worked for Schlumberger from October 2008 until November 17, 2015. He primarily worked out of the Conway, Arkansas location. McLendon's proposed FLSA class includes:

> All Senior Field Technicians and Expert Field Technicians employed by Defendant at any time since December 9, 2012.

Document #10 at 1, ¶2. The FLSA authorizes "similarly situated" employees to proceed collectively to recover damages for violations of the FLSA's overtime provisions. 29 U.S.C. § 216(b) (2006). The FLSA does not expressly define "similarly situated." Although the Eighth Circuit has not addressed the issue, this Court and others within the Eighth Circuit have applied the two-step approach set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Maclin v.*

*Montgomery and Sons Const., Inc.*, No: 4:12CV5, 2012 WL 5818163 at *1 (E.D. Ark. Nov. 15, 2012) (applying the two-step approach); *In re Pilgrim's Pride*, No. 1:07CV1832, 2008 WL 4877239, at *2 (W.D. Ark. Mar. 13, 2008) (citing to federal courts that follow the two-step approach and adopting it); *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005) (applying the two-step approach); *Kalish v. High Tech Inst., Inc.*, No. Civ. 041440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005) (applying the two-step approach); *McQuay v. Am. Int'l Group*, No. 4:01CV00661, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002) (noting that "a majority of courts have adopted a two-step process"). "This approach provides for a two-step determination as to whether class certification is proper." *Davis*, 408 F. Supp. 2d at 815. Generally, the plaintiffs move for conditional certification at an early stage in the litigation, and a class is conditionally certified for notice purposes. *Id.* Then, the defendant is allowed the opportunity to move for de-certification at the close of discovery. *Id.*

In the first stage, or "notice stage," courts apply a lenient standard to determine whether persons similarly situated to the named plaintiffs exist and should receive notice. *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1082 (D. Minn. 2014). The plaintiffs bear the burden of proof at this stage, and they "can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). The plaintiffs can satisfy their burden through the use of affidavits, supported by admissible evidence. *Jost v. Commonwealth Land Title Ins. Co.*, No. 4:08CV734, 2009 WL 211943, at *2-3 (E.D. Mo. Jan. 27, 2009). "The plaintiffs may not meet this burden through unsupported assertions of additional plaintiffs and widespread FLSA violations." *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo.

2010). However, the Court "does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Chin*, 57 F. Supp. 3d at 1083.

## II.

The key issue is whether McLendon has shown that his position is similarly situated to the other employees he contends were harmed by Schlumberger's practice of refusing to pay overtime. "To determine whether employees are similarly situated, a district court considers several factors, including the following: (1) whether the plaintiffs hold the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices; and (5) the extent to which the acts constituting the alleged violations are similar." *Smith v. Frac Tech Serv., Ltd.*, No. 4:09CV00679 JLH, 2010 WL 743296 at *3 (E.D. Ark. Feb. 26, 2010) "However, the plaintiff need not show that members of the conditionally certified class are identically situated." *Pressler v. FTS USA, LLC*, No. 4:09CV00676 JLH, 2010 WL 1904974 at *4 (E.D. Ark. May 12, 2010).

McLendon alleges in his complaint that he was employed as a senior field technician throughout 2013 and 2014, and that he was employed as an expert field technician from January 2015 through November 2015. Document #1 at 5, ¶¶ 22, 23. The complaint describes his job as "manual labor. He ran tubing conveyed perforating at various oil sites, which involved loading perforating guns, transporting them to the job site, and performing the perforating operations at the site. When the job was completed, [he] transported the equipment back to the shop and ensured that it was ready for the next job." *Id*. at 5-6, ¶ 28. McLendon is less descriptive about the duties he performed in the two affidavits he submitted to the Court in support of the motion for conditional certification. *See* Document #10-7; Document #14-1. He states in his first affidavit: "I spent part

3

of my day in the shop assembling and de-assembling equipment and part of my day outdoors at well sites operating equipment." Document #10-7 at 1, ¶ 4. He also states: "As both a Senior Field Technician and an Expert Field Technician, my primary job duties were to transport, maintain, and run equipment at various job sites. I observed other Senior Field Technicians and Expert Field Technicians working on various locations, and we all performed similar work." *Id*. at 2, ¶ 12. McLendon maintains that he was always classified as a salaried employee and was not paid any overtime pay, but that he "did not regularly supervise any group of employees, nor did [he] have the authority to hire or fire other employees. This was true for all of the other Senior Field Technicians and Expert Field Technicians that [he] worked with, as well." *Id*. at 3, ¶ 13.

In his second affidavit, McLendon stresses that his job primarily involved the performance of manual labor and that he was able to observe the work of other senior field technicians and expert field technicians. Document #14-1 at 2, ¶ 9. He states: "The work that I and other Senior Field Technicians and Expert Field Technicians performed was similar regardless of the location where we worked or the specific jobs assigned us to, and primarily involved transporting, maintaining and running equipment at Schlumberger's various job sites." *Id*. McLendon also stated that although he worked primarily out of Conway, Arkansas, he also worked in Oklahoma, Texas, and Louisiana. *Id*. at 2, ¶ 7. According to McLendon, the work he did in other states was substantially the same work that he did in Arkansas, and Schlumberger's policies applied at all of the company's locations. *Id*. at 2, ¶ 8.

Schlumberger argues that McLendon is not similarly situated to members of the proposed class because Schlumberger did not employ McLendon as an or senior field technician or expert field technician during the relevant statutory time period. Document #13 at 1. Rather, Schlumberger employed McLendon as a Tubing-Conveyed and Perforating Specialist ("TCP

4

Specialist"). *Id*. McLendon clarifies this job title issue in his second affidavit, stating: "'TCP Specialist' describes the work I performed during the time that I was a Senior Field Technician and an Expert Field Technician; That is [Schlumberger] assigned me to Tubing-Conveyed Perforating jobs." Document #14-1 at 1, ¶ 4.

Schlumberger first asks the Court to rely on the affidavit of its business manager over the affidavit of McLendon to find that he did not share the same job title as the employees to whom he claims to be similarly situated, Document #13-3, but the Court declines to do so at this stage of the analysis and assumes that McLendon's job title during the relevant statutory period was either senior field technician or expert field technician. *See Pressler,* 2010 WL 1904974 at *4.

Second, Schlumberger argues that McLendon has failed to show that the members of the proposed class are similarly situated to him, because he only provides a self-serving affidavit with vague and incomplete descriptions of their job duties. Document #13 at 2. McLendon, however, contends that his affidavit is based on personal knowledge and it is reasonable for the Court to infer that he understands and is familiar with his employer's practices as they relate to himself and other similarly situated employees. *See* Document #14 at 6. But McLendon seeks certification of a nationwide class. There is no colorable basis for McLendon's allegation that senior field technicians and expert field technicians at locations nationwide were together misclassified as exempt employees, nor is there a colorable basis for the allegation that McLendon, senior field technicians, and expert field technicians had similar work duties and responsibilities and operated under similar work conditions. McLendon states in his first affidavit that "Defendant has operations throughout the United States, wherever oil field services are required." Document #10-7 at 2, ¶ 7. Yet, he submits only his own affidavits based on the personal knowledge he acquired working primarily in

Arkansas, but some in Oklahoma, Texas, and Louisiana. *See* Document #10-7; Document #14-1. While McLendon is not required to provide evidence showing Schlumberger's unlawful practices at each and every one of its locations, *Burch v. Qwest Commc'n Intern., Inc.*, 500 F. Supp. 2d 1181, 1187 (D. Minn. 2007), he must provide some evidence that Schlumberger employees outside of Arkansas, Oklahoma, Texas, and Louisiana are similarly situated to him. *See Jenkins v. TJX Co.*, 853 F. Supp. 2d 317, 321 (E.D.N.Y. 2012).

McLendon has not provided a formal, nationwide Schlumberger policy that mandates non-exempt job duties, therefore violating the FLSA. *See* Document #1. Rather, McLendon's theory of the case is that senior field technicians and expert field technicians were not paid overtime even though they were non-exempt from the FLSA's overtime requirements because of the duties they performed. However, he has provided no evidence, other than general, conclusory statements in his own affidavits, that FLSA violations affected employees at locations other than Arkansas, Oklahoma, Texas, and Louisiana. McLendon's allegations focus on the duties that senior field technicians and expert field technicians perform in practice–transporting, maintaining, and running equipment at various job sites–and the fact that these employees regularly worked more than forty hours a week, but were only paid a salary and non-discretionary bonuses. Document #1 at 7, ¶¶ 38-39; Document #10-7 at 2, ¶ 12. He contends that he performed the same job duties at all of the locations where he worked. Document #10-7 at 2, ¶ 9. But he presents no evidence that senior field technicians and expert field technicians at Schlumberger locations outside of Arkansas, Oklahoma, Louisiana, and Texas performed these types of duties, nor does he present evidence that they were only paid a salary and non-discretionary bonuses, so there is no colorable basis for McLendon's claim that senior field technicians and expert field technicians nationwide were the victims of a

single decision, policy, or plan. *See Smith v. Frac Tech Serv., Ltd.*, No. 4:09CV000679 JLH, 2009 WL 4251017 at *8 (E.D. Ark. Nov. 24, 2009) ("The affidavits from two Field Coordinators are not sufficient to show that all other Field Coordinators in all other geographic locations performed similar duties."). *Compare Frac Tech Serv.*, 2010 WL 743296 at *4 (finding that Field Engineers who worked in different geographic locations met the lenient notice stage burden for similarly situated because "[t]he plaintiffs submitted affidavits from Field Engineers and Service Supervisors who worked in all or nearly all of the geographic locations in which Frac Tech has offices."). Therefore, the Court will not certify a broad conditional class.

## III.

Now, the Court must decide whether McLendon has demonstrated that notice should be issued to a narrower class of Schlumberger employees–the senior field technicians and expert field technicians who worked in Arkansas, Texas, Oklahoma, and Louisiana. The burden at this stage is not onerous, and conditional certification is generally granted. However, the evidence McLendon provides is sparse and tends to show that his duties were different from those of other senior field technicians and expert field technicians. The complaint alleges:

> 28. As a Senior and/or Expert Field Technician, Sidney McLendon's primary job duty was manual labor. He ran tubing conveyed perforating at various oil sites, which involved loading perforating guns, transporting them to the job site, and performing the perforating operations at the site. When the job was completed, Plaintiff transported the equipment back to the shop and ensured it was ready for the next job.

Document #1 at 5-6, ¶ 28. But McLendon states in first affidavit:

> 4. The jobs of Senior Field Technicians and Expert Field Technicians are very physical and demanding jobs. I spent part of my day in the shop assembling and de-assembling equipment and part of my day outdoors at well sites operating equipment.
>
> * * *

7

12. As both a Senior Field Technician and an Expert Field Technician, my primary job duties were to transport, maintain, and run equipment at various job sites. I observed other Senior Field Technicians and Expert Field Technicians working on various locations, and we all performed similar work.

13. As a Senior Field Technician and as an Expert Field Technician, I did not regularly supervise any group of employees, nor did I have the authority to hire or fire other employees. This was true for all of the other Senior Field Technicians and Expert Field Technicians that I worked with as well.

14. I had no authority to bind the company. This was true for all of the other Senior Field Technicians and Expert Field Technicians that I worked with, as well.

Document #10-7 at 1-3, ¶¶ 4, 12-14. In his second affidavit, after Schlumberger presented evidence that he was a TCP Specialist, not a senior field technician or an expert field technician, McLendon said:

4. "TCP Specialist" describes the work I performed during the time that I was a Senior Field Technician and an Expert Field Technician; that is, Schlumberger assigned me to Tubing-Conveyed Perforating jobs.[1]

\* \* \*

9. In the performance of my duties for Schlumberger, I have been able to observe the work of other Senior Field Technicians and Expert Field Technicians. The work that I and other Senior Field Technicians and Expert Field Technicians performed was similar regardless of the location where we worked or the specific jobs Schlumberger assigned us to, and primarily involved transporting, maintaining and running equipment as Schlumberger's various job sites.

10. The extreme hours Schlumberger required us to work without overtime pay was a common complaint among the Senior Field Technicians and Expert Field Technicians I interacted with.

---

[1] This raises two questions that McLendon fails to answer: (1) To what kind of "specialist" jobs were other senior field technicians and expert field technicians assigned, if any?; and (2) What responsibilities did those jobs entail?

Document #14-1 at 1-2, ¶¶ 4, 9-10.  McLendon first alleged in his complaint that his duties specifically revolved around tubing-conveyed perforating.  Then, in support of his contention that he is similarly situated to the other employees included in his proposed class, McLendon broadly stated that his duties involved transporting, maintaining, and running equipment.  Finally, after Schlumberger presented evidence that he was a TCP Specialist, not a senior field technician or an expert field technician, he stated that TCP Specialist merely described the duties Schlumberger required him to perform.

In *Smith v. Frac Tech Services, Ltd.*, this Court declined conditional certification of a broad collective action, where, as here, the business involved drilling for oil and gas.  2009 WL 4251017 at *1.  There, the plaintiffs alleged that Frac Tech, an oil field service company that services oil and gas wells throughout the United States, routinely required its Service Supervisors, Field Coordinators, and Field Engineers to work more than forty hours per week but did not compensate them for overtime as required by the FLSA.  *Id*.  In support of their motion for a collective action, the plaintiffs submitted several affidavits–nine from Service Supervisors, two from Field Coordinators, and one from a Field Engineer–describing the nature of their job duties.  *Id*. at *2.  The Court scrutinized the affidavits and determined that they were similar in large part, except for the description of job duties.  *Id*.  For example, when not on the job site one Field Coordinator was responsible for ensuring the necessary fluid, chemical testing, and paperwork was prepared for the next job.  *Id*.  A different Field Coordinator, however, ensured that equipment was prepared for the next job by loading trucks with chemicals and driving them back to the yard.  *Id*.  Further, the Service Supervisors and the Field Engineer stated that they completed various numbers of employee

evaluations but never recommended an employee for promotion. *Id*. at 3. The Field Coordinators, however, neither prepared any employee evaluations nor recommended promotion. *Id*.

This Court pointed out that "[t]hat numerous courts have denied certification of a collective action where determining whether putative plaintiffs are similarly situated will depend on a fact-intensive inquiry into the duties performed by each individual employee." *Id*. at 4. Surveying several cases, the Court summarized the holding in *Holt v. Rite Aid Corp.*:

> The district court denied certification of a collective action because the nature of the plaintiffs' claim turned on fact-intensive evidence of the individual plaintiffs' day-to-day tasks . . . The district court then considered the degree to which evidence regarding the plaintiffs' job duties could be applied to other employees. For the same reason–that the court would have to inquire into the daily tasks of each putative collective action member to determine whether they are similarly situated–the district court ruled against certification of a collective action.

*Id.* at 5 (citing 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004)). *See also Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (finding that where the dissimilarities among the putative collective action members extended to geography, work sites, and payment systems, "the allegations contained in the affidavits submitted to the court suggest that each claim would require extensive consideration of the individualized issues of liability and damages."). This Court ultimately held:

> The very essence of the plaintiffs' FLSA claim against Frac Tech hinges on the nature of the duties performed. The duties performed by the different employment categories will have to be analyzed to determine whether those particular duties make that particular category exempt under the FLSA . . . According to the affidavits, the duties for Service Supervisors, Field Engineers, and Field Coordinators differ. Therefore, those three employment categories cannot be similarly situated for purposes of determining whether their respective duties give them exempt status.

*Id*. at *6. Further, this Court held that while the plaintiffs made a modest factual showing that all Service Supervisors were similarly situated, "[t]he affidavit from one Field Engineer is . . . insufficient to satisfy the plaintiffs' burden of showing that all other Field Engineers are similarly

10

situated." *Id*. at *8. *See also Harris v. Southwest Power Pool, Inc.*, No. 4:11CV00679, 2011 WL 5402763 at *2 (stating that "[c]ertification is not appropriate where determining whether putative class members are nonexempt will depend on a fact-intensive inquiry into the duties performed by the different types of employees.").

In *Pressler v. FTS USA, LLC*, this Court also denied a motion for conditional certification because the plaintiff failed to demonstrate that the proposed class members were similarly situated to him. 2010 WL 1904974 at *5. The defendant, FTS, argued that the plaintiff, Pressler, did not have the same job title as the members of the proposed class. *Id*. Pressler insisted that his job title was not indicative of the duties that he performed and that he in fact performed similar duties to class members with different job titles. *Id*. Yet, he failed to offer evidence that the job titles were used interchangeably or that other class members also performed a similar role. *Id*. The evidence that Pressler provided actually tended to show that the different job titles had different duties and responsibilities. *Id*. ("A warehouse supervisor has duties, responsibilities, and competency requirements distinct from those of a warehouse manager."). This Court held that, as a result, Pressler was not entitled to conditional certification on his FLSA claim. *Id*.

McLendon's evidence likewise falls short of meeting even the lenient standard required at the initial stage. He has failed to make a modest factual showing that he and others with similar job duties were subjected to the same policies and practices. McLendon says that he worked primarily in Arkansas but also in Oklahoma, Texas, and Louisiana, yet he does not explain how many times he worked in those states, at how many locations, over what period of time, or specifically what he saw others doing. At how many locations did Schlumberger provide services in Oklahoma, Texas, and Louisiana during the relevant time? McLendon does not say. Did he work at all or most of

those locations, or only at a small fraction of them? McLendon does not say. Were all of the senior field technicians and expert field technicians at these sites performing the "Tubing-Conveyed Perforating jobs"? McLendon does not say. If not, what did the others do? McLendon does not say, except in the most general terms. While the notice stage requires only a modest factual showing, it does require a factual showing–mere conclusions will not do.[2] McLendon's affidavits are vague, general and conclusory. Conclusory affidavits from the sole named plaintiff who had limited experience outside of his locale will not suffice to make a modest factual showing that other employees in a multi-state region are similarly situated for FLSA purposes, especially when that plaintiff apparently performed different duties than others in the putative class.

## CONCLUSION

For the foregoing reasons, the motion for conditional certification and court-authorized notice is DENIED. Document #10.

IT IS SO ORDERED this 15th day of July, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[2] *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) ("labels and conclusions" do not suffice to state a claim upon which relief may be granted); *Allen v. Entergy Corp.*, 181 F.3d 902, 905 (8th Cir. 1999) (a conclusory affidavit, devoid of specific facts, does not show the existence of a genuine issue of material fact).